FREDERICK A. PATMON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Patmon v. Commissioner
Docket No. 11923-89
United States Tax Court
T.C. Memo 1991-111; 1991 Tax Ct. Memo LEXIS 135; 61 T.C.M. (CCH) 2149; T.C.M. (RIA) 91111; March 14, 1991, Filed *135 Decision will be entered for the respondent. Hallison H. Young, for the petitioner. Elias T. Majoros, for the respondent. PARKER, Judge. PARKER MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in, and additions to, petitioner's 1977 Federal income tax as follows: Additions to Tax Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)
$ 37,380.50
$ 9,345.13 $ 1,869.03
Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the year before the Court, and all rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are: (1) Whether petitioner failed to report income of $ 57,500 in 1977; (2) Whether petitioner is entitled to a Schedule C loss of ($ 9,684); (3) Whether petitioner is entitled to an additional Schedule E partnership loss of ($ 6,276); (4) Whether petitioner is entitled to Schedule A itemized deductions in the amount of $ 3,409 and to two dependency exemptions; (5) Whether petitioner is liable for self-employment tax on the alleged unreported income of $ 57,500; and (6) Whether petitioner is liable for additions to tax for *136 late filing of his return under section 6651(a)(1) and for negligence under section 6653(a). FINDINGS OF FACT There is no stipulation of facts in this case. Petitioner Frederick A. Patmon (hereinafter petitioner) did not appear or testify at the trial. At the time the petition was filed in this case, petitioner resided in Detroit, Michigan. Petitioner elected and adopted the calendar year as his taxable year for the purposes of computing his taxable income and making his return for 1977. Petitioner filed his U.S. Individual Income Tax Return, Form 1040, for 1977 with the Internal Revenue Service Center in Cincinnati, Ohio. Petitioner filed that return on April 18, 1979. Petitioner had not obtained any extension of time for the filing of his 1977 return. Petitioner claimed a filing status of "Married filing separately" on his 1977 return. He claimed dependency exemptions for two children. There is no evidence in the record to establish that he is entitled to those dependency exemptions. On Schedule A petitioner claimed itemized deductions totaling $ 3,409 ($ 200 for general sales taxes and $ 3,209 for interest expense). There is no evidence in the record to substantiate *137 the amount or to establish the deductibility of the Schedule A itemized deductions. Petitioner is an attorney with the law firm of Patmon & Young, P.C. or Patmon, Young & Kirk, P.C. On line 8 of his Form 1040, petitioner listed no income in the form of wages, salaries, tips, and other employee compensation. On line 9 of his Form 1040, he listed interest income in the total amount of $ 29,096, from Schedule B. That Schedule B interest income figure was made up of four small amounts from life insurance companies, and $ 28,994 from Patmon, Young & Kirk, P.C. The law firm had, among its clients, one Brian Holland. Mr. Holland apparently received certain checks that were turned over to the law firm and deposited into the law firm's client trust account. Mr. Holland at various times signed "CONSENT AUTHORIZATION" forms by which he authorized Patmon & Young, among other things, to "Deposit these funds or monies into one or more accounts, which may include funds belonging to you and/or other clients; * * *." [1] The law firm apparently disbursed portions of these checks as directed by Mr. Holland and deducted various fees and expenses from these check funds. *138 During 1978, petitioner, as the maker, drew four checks on the Frederick Patmon Trustee Account (Account No. 1-121912-8 with the Bank of the Commonwealth in Detroit, Michigan). These four trustee account checks were made payable to cash and were endorsed and cashed by petitioner: Date
Check Number
Amount
5/05/77
2403
$ 1,500
5/12/77
2404
35,000
5/13/77
2405
20,000
8/17/77
2418
1,000
Total
$ 57,500
There is no credible or persuasive evidence to establish that these checks cashed by petitioner were related in any way to funds belonging to Mr. Holland. [2] *139 There is no evidence in the record as to petitioner's disposition of the $ 57,500 cash proceeds he received from those checks. [3] There is no evidence that petitioner used the $ 57,500 on behalf of any client or for any other purpose that would establish that it was not income to him. See supra note 2. Attached to petitioner's 1977 tax return was a Schedule C, Profit or (Loss) From Business or Profession, listing a principal business activity of "Mfg & marketing" and listing the product as "masters & records." No gross receipts or sales from that activity were reported; a depreciation deduction in the amount of $ 9,684 was claimed, for a net Schedule C loss of ($ 9,684). There is no evidence in the record in regard to this Schedule C activity. [4] There is no evidence to substantiate the amount or to establish the deductibility of the claimed depreciation deduction of $ 9,684. *140 On a Schedule E, Supplemental Income Schedule, attached to his 1977 return, petitioner claimed a net partnership loss of ($ 21,224) as follows: Second Avenue Ltd Div
$ ( 3,452)
Lafayette Development
(12,552)
OAR Leasing
( 3,902)
PYK Partnership
(   168)
Well Program
(10,000)
IMP Program I
8,850 $ (21,224)
There is no evidence in the record to substantiate the amount or to establish the deductibility of the claimed net partnership loss. There is no evidence to establish that petitioner is entitled to deduct more than ($ 6,276) of the ($ 12,522) loss claimed for Lafayette Development. Respondent timely issued a statutory notice of deficiency on March 3, 1989. [5] Respondent increased petitioner's income by the amount of trustee account checks of $ 57,500 that he cashed and also determined that petitioner was liable for self-employment tax on that income. Respondent disallowed petitioner's Schedule A deductions, dependency exemptions, Schedule C loss and ($ 6,276) of the net partnership loss. Respondent also determined additions to tax for late filing of the 1977 return under section 6651(a)(1) and for negligence under section 6653(a). *141 OPINION The issues in this case are inherently factual and petitioner bears the burden of proof. ; Rule 142(a). The record is essentially devoid of evidence, and petitioner has failed to carry his burden of proof. [6]
As to the item of unreported income of $ 57,500, section 61(a) provides that gross income means "all income from whatever source derived." Respondent established that petitioner drew four checks on the Frederick Patmon Trustee *142 Account that petitioner endorsed and cashed. That puts the $ 57,500 cash into petitioner's hands, a clear accretion to wealth and hence income to him. ; Cf. . Petitioner has failed to show that he used that cash for his clients or otherwise to establish that it was not income to him. See supra note 2. An attorney's handling and disbursement of a client's funds are matters peculiarly within the control and knowledge of that attorney. Therefore, it is not unreasonable to expect the attorney to be able to account for such funds. Here there were just four specific checks at issue. Those check numbers, dates, amounts, and endorsements were set out in detail in the deficiency notice dated March 3, 1989. The Notice Setting Case for Trial was served on December 6, 1989, for trial during the trial session of the Tax Court in Detroit, Michigan, commencing May 7, 1990. The case was reached for trial on May 10, 1990. Petitioner did not appear or testify at the trial, and his counsel's complaints as to the difficulties in documenting *143 these transactions are not well taken. This is an instance where the information is peculiarly within the knowledge and control of petitioner. His failure to come forward with the evidence (either documentary or testimonial) warrants an inference that the evidence, if produced, would not support his contention. , affd. . See supra note 2. Accordingly, we conclude that petitioner did receive unreported income of $ 57,500 and that he is liable for self-employment tax on that unreported income. Petitioner's 1977 tax return was filed late. He has the burden to establish that his failure timely to file was "due to reasonable cause and not due to willful neglect." Sec. 6651(a)(1); . He has failed to carry his burden of proof, and we must sustain the late filing addition. Petitioner also has the burden to establish that his underpayment of tax was not "due to negligence or intentional disregard of rules and regulations." Sec. 6653(a); . *144 He has not sustained his burden. To reflect the above holdings, Decision will be entered for the respondent. Footnotes
1. There are certain "CONSENT/AUTHORIZATION" forms and a certain agreement between Mr. Holland and the law firm in evidence. However, these documents are undated, and there is no credible or persuasive evidence to establish the date of any of these documents. Another group of documents for a certain transaction were offered into evidence but were not received by the Court. Those documents were dated 1974, and there was no evidence to connect those documents or that transaction with any of the transactions or issues in this case.↩
2. Neither petitioner nor Mr. Holland appeared or testified at the trial although both were listed as witnesses on petitioner's Pre-Trial Memorandum. Petitioner's counsel attempted to tie these checks to certain deposits into that trustee account through the testimony of a secretary who has been a long-time employee of, and who is still employed by, the Patmon & Young firm. The Court did not find her testimony credible or persuasive. Moreover, assuming those checks were in some way related to deposits into that account of Mr. Holland's funds, that would not explain the disposition of the cash proceeds by petitioner or otherwise affect the conclusion reached by the Court. The Court did not believe the secretary's testimony about the disposition of these funds.↩
3. Check No. 2418 dated August 17, 1977, or its proceeds may have been deposited into the Patmon & Young general firm account (Account No. 1-146822-0).↩
4. In disallowing the deduction for the "Master Recording activity," the deficiency notice lists a long litany of reasons, any one of which would constitute a sufficient basis for disallowance. These various grounds for disallowance include whether or not the transaction occurred in fact or substance, whether there was a profit objective, and whether there was any economic substance to the transaction. Since the record is totally devoid of any evidence about the master recording activity, we need not discuss any of these grounds for disallowance. In his post-trial brief, petitioner for the first time tries to rely on documents and evidence in other cases in this Court. The parties in this case did not agree to be bound by the outcome of those cases; petitioner did not offer those documents and evidence at the trial of this case; consequently, those materials are not part of the evidentiary record of this case, and will not be considered by the Court. Although the Court extended petitioner's time to file a reply brief to and including February 6, 1991, he did not file a reply brief.↩
5. In his post-trial brief, petitioner for the first time raises an issue as to the statute of limitations. The statute of limitations is an affirmative defense that must be specifically pleaded. Rule 39. Petitioner did not plead the statute of limitations in his petition or any other pleading in this case. Petitioner did not raise the statute of limitations issue in his Pre-Trial Memorandum or at the trial of this case. New issues cannot be raised for the first time in a post-trial brief. . See also , T.C.M. (RIA) P89480 at 2377.↩
6. In his petition, petitioner broadly asserted that the Commissioner's determination of tax and issuance of the deficiency notice "was malicious, arbitrary, capricious, illegal and computed without any factual or legal basis." He also contended that the Commissioner issued the deficiency notice "in retaliation" against petitioner for various actions and because "Petitioner exercised his rights guaranteed by the United States Constitution." Petitioner also failed to produce any evidence to support these charges.↩